UNITED STATES of America,
Plaintiff-Appellee,

v.

Franklin Neil BRADY,
Defendant-Appellant.

No. 86–5305.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 1987.

Decided June 10, 1987.

Nancy L. Worthington, Asst. U.S. Atty., argued, Peter K. Nunez, U.S. Atty., Nancy L. Worthington, Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

Ezekiel E. Cortez, Barbara Duey, San Diego, Cal., for defendant-appellant.

Before SNEED, KOZINSKI and THOMPSON, Circuit Judges.

SNEED, Circuit Judge:

Appellant claims that the district court ought to have suppressed certain statements he made to a police officer and the physical evidence to which the statements led. We disagree. Therefore, we affirm appellant's conviction for possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1).

## I.

### FACTS AND PROCEEDINGS BELOW

About 6:00 p.m. on May 29, 1986, two policemen were called to investigate a report of a man beating a woman. The first officer to arrive on the scene, Officer Triviz, talked to a girl seated in the passenger seat of a parked car. She said there was nothing wrong, but appeared nervous. A young couple approached Triviz and said that a man had struck a woman on the head, had forced her into a black Thunderbird, and had driven away. They provided a license plate number. Another passerby corroborated the story, except for one digit of the car's license plate. Officer Johnson, who had arrived in the meantime, drove around the block and looked in vain for the Thunderbird. Shortly thereafter, the young man who had been talking to Triviz said, "There he is." Appellant Franklin Brady approached in a black Thunderbird and slowed down. Triviz backed his patrol car toward the Thunderbird. A woman, Caroline Roseborough, got out of the Thunderbird and ran toward Johnson.

Triviz, shielded by the patrol car's door, drew his gun and ordered Brady to get out of the Thunderbird. After Brady complied, an officer frisked him and found no weapons. Triviz was concerned, among other reasons, because he saw a suspected motorcycle gang member carrying a knife among the group of people who had gathered. Triviz asked Brady for permission to search the Thunderbird. Brady replied ambiguously. Triviz also asked Brady if he had a gun in the car. Brady indicated that he had a gun in the trunk.[1] Triviz

---

1. The three witnesses at the suppression hearing gave different accounts of the conversation between Triviz and Brady. The district court found, contrary to Triviz's testimony, that Triviz asked Brady if he had a gun. Reporter's Transcript (R.T.) at 144, 156, 159. The district court also assumed that Triviz asked for permission to search the car in general, and that it was Brady who mentioned the trunk in particular. R.T. at 145–46, 148. The transcript of each witness's testimony reads as follows:

    *Officer Triviz.*
    A. I believe I said, "Do you mind if I search your car?"

searched the trunk of the Thunderbird and the containers within it. He found a revolver, two speed loaders, ammunition, seal bombs, an electronic scale, a bag of what appeared to be methamphetamine, and a powder that appeared to be a cutting agent.

The three witnesses who testified at the suppression hearing gave conflicting testimony about the circumstances of Triviz's conversation with Brady. Triviz testified that he spoke with Brady before putting him in his caged patrol car, and that he handcuffed Brady only after putting him in the car. Reporter's Transcript (R.T.) at 15–16, 33–34. According to Johnson, Triviz both handcuffed Brady and seated him in the back of his patrol car before asking for permission to search. R.T. at 106, 116. Roseborough testified that Triviz handcuffed Brady immediately after the patdown, then questioned him, but did not put Brady in the patrol car until some time after that. R.T. at 53–55.

A grand jury indicted Brady for possession of a controlled substance with intent to distribute. Brady moved to suppress physical evidence. After a hearing, the district court denied this motion and Brady's oral motion to suppress his statements. Brady entered a guilty plea conditioned upon his right to appeal. That appeal is now before us. The district court sentenced Brady to five years' imprisonment, a special parole term of three years, and a $50 penalty assessment.

> ....
> Q. When you asked the defendant that question, did he give you a response?
> A. Yeah. He looked a little dejected and hung his head and said, "No. No, I don't want you to search it. I have a gun in the trunk."
> R.T. at 16; *see* R.T. at 36–37 (cross-examination).
> *Ms. Roseborough.*
> A. Okay, when they were waiting for the warrant check to come back, I believe, Officer Triviz asked, he goes, "Do you mind if I look in your car?" He said that to Frank.
> And Frank kinda said, "Well, not really, but I guess it's okay if you look in it." And Officer Triviz said, "Oh—" Frank, said something about, that he couldn't search—couldn't search the trunk, and Officer Triviz goes, "Well, why? Do you have a gun?"

## II.

## STANDARD OF REVIEW

■ We review findings of fact at a suppression hearing for clear error. *United States v. Feldman,* 788 F.2d 544, 550 (9th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). Whether a person was in custody and whether he was interrogated are questions of fact. *United States v. Poole,* 806 F.2d 853, 853 (9th Cir.), *amending* 794 F.2d 462 (9th Cir. 1986). No Ninth Circuit case defines the standard of review for a district court's finding that a threat to public safety temporarily suspends the obligation to give *Miranda* warnings. Because this is a mixed question of fact and law that implicates constitutional rights, we hold that it is subject to de novo review. *See United States v. McConney,* 728 F.2d 1195, 1202–04 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## III.

## DISCUSSION

Brady contends that Triviz violated *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), by asking him whether he had a gun. Consequently, Brady continues, Triviz could not rely on Brady's response to the question to establish probable cause to search the Thunderbird.

> Q. What did Frank say?
> A. Frank said yes.
> R.T. at 55; *see* R.T. at 59–60 (cross-examination).
> *Officer Johnson.*
> A. After Mr. Brady had sat in the car, Officer Triviz asked him, "Hey, what's going on?" Mr. Brady said, "I don't know what you're talking about." Officer Triviz says, "Have you got any weapons in your car?" And he says, "No."
> He said, "Do you mind if I look?" He says, "Well, I don't want you to look because I have a gun in the car," or something to that general statement. That's not an exact quote.
> R.T. at 107; *see* R.T. at 116–17 (cross-examination).

Brady concludes that the evidence found in the trunk should be suppressed.

### A. *Custodial Interrogation.*

█ *Miranda* requires the police to give certain warnings to a person in custody before interrogating him. 384 U.S. at 444–45, 86 S.Ct. at 1612–13. A person is in custody if he is under arrest, or if his freedom of movement is restrained to a degree associated with formal arrest. *New York v. Quarles,* 467 U.S. 649, 655, 104 S.Ct. 2626, 2631, 81 L.Ed.2d 550 (1984). If the police stop a person, a court should inquire whether the "stop exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." *Berkemer v. McCarty,* 468 U.S. 420, 437, 104 S.Ct. 3138, 3149, 82 L.Ed.2d 317 (1984). If a stop is brief, public, and not dominated by the police, a *Miranda* warning is not required. *Id.* at 437–39, 104 S.Ct. at 3148–50.

█ Courts in this circuit apply an objective reasonable person test to determine whether a person is in custody. *United States v. Crisco,* 725 F.2d 1228, 1231 (9th Cir.), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984). Ordinarily, we defer to a district court's finding on this question. However, in this case the district court made no explicit finding as to whether Brady was in custody. The government urges us to assume that Brady was not in custody, while Brady asserts that the district court implicitly found that he was in custody by its *Miranda* rulings.

█ Where necessary, we will independently examine facts, findings, and the record to determine whether constitutional rights have been respected. *United States v. Walczak,* 783 F.2d 852, 855 (9th Cir. 1986). On balance, we conclude that Brady was in custody. Two officers stopped him at gunpoint. Two witnesses said Brady was handcuffed before being questioned. The circumstances in which Brady was questioned resemble the circumstances in *Quarles,* 467 U.S. at 652, 655, 104 S.Ct. at 2629, 2631. There the Supreme Court held that the accused, Quarles, was in custody. We reach the same conclusion here.

█ Moreover, Triviz's conversation with Brady constituted interrogation. "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) (footnotes omitted), *cited with approval in Arizona v. Mauro,* —— U.S. ——, 107 S.Ct. 1931, 1934, 95 L.Ed.2d 458 (1987). By asking Brady whether he had a gun, Triviz opened the way to Brady's admission that he had one. This response could incriminate Brady in several ways. For example, it could indicate that Brady was violating state statutes that regulate possession of firearms.[2] Thus, we conclude that Triviz's conversation with Brady amounted to on-the-scene custodial interrogation.

### B. *The* Quarles *Exception.*

The district court held that this case falls within the public safety exception to the *Miranda* requirement. In *Quarles,* the Supreme Court held that *Miranda* need not "be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety." 467 U.S. at 656, 104 S.Ct. at 2632. Inasmuch as the *Miranda* warning requirement is not a constitutional right, *id.* at 654, 104 S.Ct. at 2630, but rather a "prophylactic" measure, exceptions are constitutionally permissible. The *Quarles* exception rests on the ease with which "police officers can and will distinguish almost instinctively between questions necessary to

---

**2.** Contrary to the government's argument, even if Triviz could search the interior of the car for weapons under *Michigan v. Long,* 463 U.S. 1032, 1049–51, 103 S.Ct. 3469, 3480–82, 77 L.Ed.2d 1201 (1983), that would not imply that he could ask Brady if he had a gun. Questioning can be more intrusive than a search because it can evoke an incriminating response in a situation where a lawful search would uncover nothing.

secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect." *Id.* at 658–59, 104 S.Ct. at 2632–33. Our review draws its substance from the same distinction. Under the circumstances of this case, we hold that Triviz's questions were not designed to elicit testimonial evidence. That is, they were not investigatory.[3]

Triviz had to control a dangerous situation. A crowd was gathering on the public street where Brady's Thunderbird stood with its door open and the keys in the ignition. This was a rough neighborhood, and it was growing dark. If Brady had a gun in the passenger compartment of his car, a passerby or accomplice could seize it. R.T. at 146–47. In order to neutralize this danger, Triviz properly asked Brady whether he had a gun.

Brady emphasizes the factual differences between this case and *Quarles*.[4] In *Quarles*, the police "were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket." 467 U.S. at 657, 104 S.Ct. at 2632. By contrast, Triviz had much less reason to believe that Brady had disposed of a gun in a place where it posed an immediate public danger. In *Quarles*, an eyewitness told police that Quarles was armed. No one said Brady was armed. In *Quarles*, the arresting officer saw Quarles' empty holster. There was no similar indication that Brady possessed a weapon. In *Quarles*, the officer had reason to believe that Quarles had disposed of his gun where it posed a public danger. Triviz had no reason to think that Brady had placed an unguarded weapon in a public place.

The questions posed to Quarles also differed from the questions posed to Brady. In *Quarles*, the officer asked, "Where is the gun?" This question was immediate, spontaneous, and urgent. By contrast, the colloquy between Triviz and Brady was more extended. Also, there is conflicting testimony about exactly what Triviz and Brady said. *See supra* note 1. But it appears that Triviz asked more than one question, and that he tried to obtain Brady's consent to search before Brady mentioned the gun in his car trunk.

Although we acknowledge these differences, we do not believe that the Supreme Court in *Quarles* intended to limit its ruling to the particular facts of that case. The case before us falls between the polar cases of *Quarles*, which illustrates questioning exempt from *Miranda*, and *Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), which illustrates questioning subject to *Miranda*. In *Orozco*, police arrested the suspect in his bedroom at 4:00 a.m. to ask him about his whereabouts at the time of a murder and whether he owned a pistol. 394 U.S. at 325, 89 S.Ct. at 1096. The questions were investigatory and sought to elicit testimonial evidence. They were not aimed at controlling an immediate threat to public safety. Therefore Orozco was entitled to a *Miranda* warning.

Triviz's questions to Brady arose from his concern with public safety, his desire to obtain control of what could be a dangerous situation. They were not designed to obtain evidence of a crime. Therefore *Quarles*, not *Orozco*, applies. Brady was not entitled to a *Miranda* warning, and we will not suppress his statements. The only

---

3. Triviz's subjective motivation does not affect whether *Quarles* applies. 467 U.S. at 656, 104 S.Ct. at 2631. Rather, we ask whether there was "an *objectively* reasonable need to protect the police or the public from any immediate danger." *Id.* at 659 n. 8, 104 S.Ct. at 2633 n. 8 (emphasis added).

4. In *Quarles*, a woman alleged that an armed man had raped her and had entered a store. An officer went into the store, saw a man matching the woman's description, and pursued him to the back of the store. When he apprehended the suspect, the officer noticed that the suspect's shoulder holster was empty. The officer asked where the gun was. The suspect nodded toward some empty cartons and said, "the gun is over there." It was. The Supreme Court held that neither the statement nor the gun need be suppressed.

remaining issue is whether Brady's answers gave Triviz probable cause to search his car trunk. To that we now turn.

### C. *Probable Cause to Search.*

█ After Brady said he had a gun in the trunk, Triviz had probable cause to think that Brady was violating California Penal Code § 12025, which prohibits carrying a concealed firearm in a vehicle without a permit. Under *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982), Triviz could search Brady's car and containers within it that might conceal a firearm. R.T. at 158–59 (district court's holding).

█ Alternatively, Triviz derived authority for the search from California Penal Code § 12031(e). Section 12031 prohibits carrying a loaded firearm in a vehicle in a public place, and subsection (e) authorizes the police to examine a firearm to determine whether it is loaded. Some California courts have held that the police must have probable cause to believe that a firearm is loaded before they may inspect it. *See, e.g., People v. Kern,* 93 Cal.App.3d 779, 782–83, 155 Cal.Rptr. 877, 879 (1979). However, the prevailing view is that the police may inspect a firearm which they know is in a vehicle, regardless of whether they have probable cause to believe that it is loaded. *People v. Azevedo,* 161 Cal. App.3d 235, 244, 207 Cal.Rptr. 270, 275–76 (1984) (following *People v. Zonver,* 132 Cal. App.3d Supp. 1, 183 Cal.Rptr. 214 (1982)); *People v. Greer,* 110 Cal.App.3d 235, 238–39, 167 Cal.Rptr. 762, 764 (1980); *People v. DeLong,* 11 Cal.App.3d 786, 791, 90 Cal. Rptr. 193, 195–96 (1970).

Therefore the search of the trunk was valid. Triviz found the drugs in plain view. Thus, both statements and drugs clear the barriers of *Miranda* as well as the Fourth and Fifth Amendments. We uphold the district court's decision to deny Brady's motions to suppress physical evidence and statements.

AFFIRMED.