12 F.3d 1110
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas William WATKINS, Defendant-Appellant.
 No. 92-50463.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 6, 1993.
Decided Dec. 9, 1993.
 
 Before: TANG, D.W. NELSON, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Thomas William Watkins appeals the denial of his motion to suppress and his subsequent conviction and sentencing. Watkins was convicted of four counts: possession of methamphetamine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1), use of a firearm during a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c)(1), possession of a firearm while a felon in violation of 18 U.S.C. Sec. 922(g)(1), and possession of an unregistered firearm in violation of 26 U.S.C. Sec. 5861(d). The court sentenced Watkins to 480 months.
 
 
 3
 Watkins contends the trial court erred in: (1) using the public safety exception to admit statements he made before he received the warning required by Miranda v. Arizona, 384 U.S. 436, 444-45 (1966) ("Miranda "); (2) admitting as evidence a gun and methamphetamine secured during a warrantless search of his mobile home; and (3) sentencing him to a term of 480 months, or forty years.
 
 DISCUSSION
 Standard of Review
 
 4
 The de novo standard of review is applied to a district court's finding that a threat to public safety temporarily suspends the obligation to give a Miranda warning. United States v. Brady, 819 F.2d 884, 886 (9th Cir.1987), cert. denied, 484 U.S. 1068 (1988).
 
 
 5
 The court's conclusion of exigent circumstances is reviewed de novo, and its findings of fact are reviewed for clear error. United States v. George, 883 F.2d 1407, 1411 (9th Cir.1989). The legality of a sentence is reviewed de novo. United States v. Hahn, 960 F.2d 903, 907 (9th Cir.1992).
 
 
 6
 1. Whether the Court Erred in Admitting Watkins' Statement That a Gun Was on the Premises
 
 
 7
 Watkins contends the trial court erred in admitting his statement that there was a gun in a 3- by 3-foot wooden box on the patio. He claims he did not give the police permission to search the patio. Watkins argues that he was in custody and should have received the Miranda warning and since he did not, his statement was inadmissible.
 
 
 8
 Miranda requires that the police give certain warnings to a person in custody before interrogation can begin. 384 U.S. at 444-45. "A person is in custody if he is under arrest, or if his freedom of movement is restrained to a degree associated with formal arrest." Brady, 819 F.2d at 887. We apply an objective "reasonable person" test to determine whether a person was in custody. Id. The district court did not make an explicit finding whether Watkins was in custody. Although we may independently examine facts, findings, and the record to determine whether Watkins was in custody, see id., we decline to do so. Even if Watkins was in custody, the "public safety" exception to the Miranda rule applies.
 
 
 9
 The Supreme Court has held that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." New York v. Quarles, 467 U.S. 649, 657 (1984). "This exception applies to exigencies involving the safety of both the public at large and the officers on the scene." United States v. DeSantis, 870 F.2d 536, 539 (9th Cir.1989) (citing Quarles, 467 U.S. at 658-59). Nevertheless, the public safety exception does not permit police coercion to obtain self-incriminating statements. Id. at 540. The inquiry, therefore, is whether there is any evidence the statements were obtained coercively. See id. at 541.
 
 
 10
 Viewing the totality of the circumstances, the police cannot be said to have coerced Watkins into revealing the presence of the gun. The police were summoned after Watkins' neighbors reported heavy gunfire somewhere in the mobile home park. After locating one mobile home with broken glass, a completely broken out sliding glass door, and a wounded person who turned out to be Watkins inside, the police, who perceived Watkins as a victim, proceeded to question him to find out what had happened. Watkins was questioned in his own home, which is "a considerably less coercive environment than the police station." See id. Deputy Averbeck questioned Watkins about the presence of a gun only after Averbeck discovered that some of the shots had been fired from inside. Viewed objectively, Averbeck's questions were not intended to elicit evidence of a crime, but rather to obtain control of what could be a dangerous situation, to prevent injury to those living in the mobile home park and to the police. See Brady, 819 F.2d at 888.
 
 
 11
 Because the public safety exception applies to the facts of this case, Watkins' constitutional rights were not violated when the police questioned him about the presence of a gun without giving him a Miranda warning.
 
 
 12
 2. Whether the Court Erred in Admitting the Statements Made at the Hospital
 
 
 13
 After his arrest, Watkins was taken to the hospital for treatment of his wounds. The government admits he was in custody at that time. No. CR-91-1059-ER, Reporter's Transcript ("RT") of 2/24/92, at 32. Before he received the Miranda warning, Watkins stated that he was involved in the distribution of methamphetamine. The detective who questioned Watkins characterized the conversation as follows:
 
 
 14
 He was interested in striking a deal, you might say, with my office, or me, or through me, in exchange for consideration in what might happen with him over our arrest of him. If he could supply us with information or means of arresting other persons who were involved in the manufacturing process of methamphetamine.
 
 
 15
 Id. at 35-36. But Watkins' attorney argued: "It simply doesn't make sense that an individual who has refused to give his consent [to a search of his home after being placed in custody], is telling the officers that they cannot search his home, is now going to make spontaneous statements and tell [the police] he is involved in the distribution of drugs." Id. at 52.
 
 
 16
 The district court found that "the statements that were made at the hospital prior to when the Miranda warnings were given, appear to be spontaneous and do not require suppression." Id. at 55. The court stated:
 
 
 17
 Now, with respect to the argument made by the defense counsel that a person who denies search of the home would not a short time later spontaneously provide incriminating statements. That has some rational basis for it, but it also suggests, and the officer has testified, that the defendant at this point knew he was in trouble. The contraband had been found. The gun had been found. He had been arrested and charged with both or on suspicion of both. The fact of the matter that he then makes some admissions in an effort to try to work something out, does not surprise the Court. And I believe that is what occurred here. He was not making any admissions more damaging than the evidence that had already been seized.
 
 
 18
 Id. at 55-56.
 
 
 19
 With respect to Miranda rights, the court's factual findings are subject to clearly erroneous review. United States v. Bland, 908 F.2d 471, 472 (9th Cir.1990). Under the clearly erroneous standard of review, we must accept the lower court's findings of fact unless we are left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985). Because the court's finding is plausible, there is no clear error.
 
 
 20
 3. Whether the Court Erred in Admitting the Gun and the Methamphetamines Secured in a Warrantless Search
 
 
 21
 Watkins and the government have contradictory accounts of how Deputy Averbeck recovered the gun and the methamphetamines. According to Watkins, after persistent questioning on the whereabouts of a gun, he told the officers there was a rifle in his bedroom. Based on his version of the events, Watkins contends that he did not consent to a second search of the patio. He claims there was no exigency because the protective sweep had ended and no dangerous individuals had been found. He claims that the deputy had no right to open the wooden box because the butt of the rifle was protruding from underneath the lid and could have been pulled out.
 
 
 22
 According to Deputy Averbeck, what transpired is this:
 
 
 23
 When I pointed out facts to him that there was glass inside the residence, there was bullet holes going both ways: Coming inside the residence and outside, also going out. Pointed out there was bloodstained carpeting. I also pointed out the fact that there were two .23 caliber ammunition casings that were in his bedroom. I explained to him that I believed he was being untruthful with me.
 
 
 24
 At that point he said, "Yes. I lied to you, Deputy. There is a machine gun in the wooden box out on my patio."
 
 
 25
 RT 2/24/92, at 19.
 
 
 26
 We cannot accept Watkins' version of the events. The district court specifically found he was not a credible witness. Id. at 64. A finding on credibility "can virtually never be clear error." Bessemer City, 470 U.S. at 575; United States v. Aguirre, 994 F.2d 1454, 1457 n. 4 (9th Cir.1993). Where Watkins repeatedly stated he did not recall the specifics of the events in question, the court's determination that he lacked credibility was not clear error. Where Watkins admitted, after initially lying, that there was a machine gun on his patio, and other suspects remained at large after a gunfight in a mobile home park, exigent circumstances permitted a warrantless search. Under these circumstances, the police properly seized the gun to protect themselves and the public at large.
 
 
 27
 Moreover, the gun was in plain view because the gun butt protruded six inches outside of the box. The methamphetamines were in plain view in the box. "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant." Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971). Those circumstances include "situations where the initial intrusion that brings the police within plain view of such [evidence] is supported ... by one of the recognized exceptions to the warrant requirement." Id. "[T]he 'plain view' doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object." Id. at 466 (citations omitted).
 
 
 28
 The court did not err in admitting the gun and methamphetamine into evidence. Exigent circumstances permitted a warrantless search, and these items were in plain view.
 
 
 29
 4. Whether the Sentence Constituted Cruel and Unusual Punishment
 
 
 30
 Based on a base offense level of 28 and a criminal history category of 4, the court imposed the mandatory minimum of 120 months for possession of methamphetamine with intent to distribute, being a felon in possession of a firearm and possession of an unregistered firearm. The court also imposed the mandatory minimum of 360 months for using a firearm during a drug-trafficking crime. Pursuant to 18 U.S.C. Sec. 924(c)(1), the 360 months was imposed to run consecutively to the 120 month sentence.
 
 
 31
 Watkins argues that this sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment because he is more than forty years old and he will spend the rest of his life in prison. However, the Supreme Court has held that a sentence of life without parole for a serious drug crime (possession of less than one kilo of cocaine) is not cruel and unusual punishment. Harmelin v. Michigan, 111 S.Ct. 2680, 2707 (1991) (Kennedy, J., concurring opinion). Here, Watkins committed a serious drug crime and at the same time he was a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g)(1). Moreover, that firearm was unregistered in violation of 26 U.S.C. Sec. 5861(d). We cannot say that his forty year sentence violates the Eighth Amendment's ban on cruel and unusual punishment.
 
 
 32
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3