**UNITED STATES of America,
Plaintiff,**

v.

**Aaron Eugene CREECH, Defendant.**

**No. 98–40086–01–SAC.**

United States District Court,
D. Kansas.

Dec. 31, 1998.

Randy M. Hendershot, Office of United States Attorney, Topeka, KS, for plaintiff.

Aaron Eugene Creech, Topeka, KS, plaintiff pro se.

David J. Phillips, Marilyn M. Trubey, Office of Federal Public Defender, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On September 9, 1998, the grand jury returned a one count indictment charging the defendant, Aaron Eugene Creech, with knowingly and intentionally possessing a double-barreled shotgun with a barrel less than 18 inches in length.

This case comes before the court upon the following pretrial motions filed by Creech (represented by Marilyn Trubey):

1. Motion to Suppress Evidence. (Dk.24).

2. Motion to Suppress Statement. (Dk.25).

3. Motion for Disclosure of 404(b) evidence. (Dk.26).

The government has filed a consolidated response. (Dk.27).

On December 9, 1998, the court conducted a hearing to consider the defendant's motions. At the conclusion of the hearing, the court took the matter under advisement. The court, having considered the briefs and arguments of the parties, the evidence presented, and the applicable law, is now prepared to rule.

**Motion to Suppress Evidence. (Dk.24).**

According to the defendant's brief, on August 3, 1998, officers with the Fugitive Task Force arrested him outside his home on county and city arrest warrants. Creech was apparently taken to his apartment. According to the defendant, before officers advised him of his *Miranda* rights, Detective Robinson asked Creech for consent to search his apartment. Creech asked the officers if they would obtain a search warrant if he refused to consent to the search. According to Creech, the officers responded that they would obtain a search warrant if he did not consent. The officers did not tell Creech that he had the right to refuse to consent to a search, and he did not think that he had that right. Creech consented to the search. Creech seeks to suppress the fruits of the search arguing that under the totality of the circumstances, his consent to search was not voluntary.

The government responds, arguing that the defendant's consent was the product of his reasoned choice. "Counsel indicates the defendant did not know he had the right to refuse, but if that is so, why did he ask the officers what would happen if he said 'no'?" Government's Brief at 3. The government also contends that the officers' response to the defendant's question—that the officers would obtain a search warrant if he did not voluntarily consent to the search—was legally correct and therefore not improper. As to the defendant's argument regarding the failure of officers to provide *Miranda* warnings, the government argues that "[u]nder the proper totality of the circumstances test it is immaterial whether the defendant was given the *Miranda* warnings, which of course have nothing to do with a search anyway." Id.

Even if the defendant's consent was not voluntarily given, the government indicates that the evidence will establish that the defendant's roommate gave her consent to the search and that the evidence would have been discovered anyway. The government goes on to suggest that even if the roommate's consent was not valid, that the evidence would have been inevitably and independently discovered when officers obtained a search warrant from the information they possessed from the victim of not one but two robberies and a sexual assault by the defendant.

### Legal Standards

#### Consensual Searches

■ A warrantless search of a suspect's premises is unreasonable per se under the Fourth Amendment unless the government shows that the search falls within one of a carefully defined set of exceptions, such as a valid consent. *United States v. Butler,* 966 F.2d 559, 562 (10th Cir.1992). Whether a consent to search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined by the totality-of-the-circumstances. *Schneckloth v. Busta-*

*monte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973). In determining whether a consent to search is voluntary, a court should consider the following: physical mistreatment, use of violence or threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant. *United States v. McCurdy,* 40 F.3d 1111, 1119 (10th Cir.1994). Evidence obtained by a consent-based search is admissible only if the government (1) produces clear and positive testimony that the consent was unequivocal, specific, and freely given, and (2) proves that the consent was given without duress or coercion, express or implied. *Butler,* 966 F.2d at 562. *United States v. Glover,* 104 F.3d 1570, 1583–84 (10th Cir.1997).

### Miranda Warnings

■ Although some circuits specifically include the presence or absence of *Miranda* warnings as a factor for determining whether a consent to search is voluntary, *see, e.g., United States v. Hathcock,* 103 F.3d 715 (8th Cir.), *cert. denied,* 521 U.S. 1127, 117 S.Ct. 2528, 138 L.Ed.2d 1028 (1997); *United States v. Torres–Sanchez,* 83 F.3d 1123, 1129 (9th Cir.1996), the Tenth Circuit apparently does not specifically included the presence or absence of Miranda warnings as a factor to be considered in determining the validity of a consensual search. Although an analysis of the "totality of the circumstances" would include a consideration of all relevant facts and circumstances—ostensibly including the presence or absence of Miranda warnings—the Tenth Circuit has held that "a consent to search is not the type of incriminating statement which the Fifth Amendment was designed to address. Consenting to a search is not 'evidence of a testimonial or communicative nature' which would require officers to first present a Miranda warning." *United States v. Rodriguez–Garcia,* 983 F.2d 1563, 1568 (10th Cir.1993).

In any event, the failure to give *Miranda* warnings, would not automatically invalidate the consensual nature of the search.

While [the officer] gave no *Miranda* warnings, never informed the defendant of his right to refuse the request for consent, and never explained that a search warrant could be obtained, the absence of these warnings does not invalidate the consent. As the [*U.S. v.]Castillo, [*866 F.2d 1071 (9th Cir. 1988)*]* Court explained, the fact that some factors are not established does not automatically mean that the defendant's consent to search was not voluntary. *Id.* at 1082.

*Torres–Sanchez,* 83 F.3d at 1130.

### Validity of Third Party's Consent

■ The law is well-settled that a warrantless entry and search by law enforcement officers does not violate the Fourth Amendment's proscription of "unreasonable searches and seizures" if the officers have obtained the consent of a third party who possesses common authority over the premises. *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). "The common authority justifying the consent need only rest 'on the mutual use of the property by persons having joint access or control for most purposes.'" *United States v. Sealey,* 830 F.2d 1028, 1031 (9th Cir.1987) (*quoting Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. 988). In *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), the Supreme Court held that a warrantless entry by law enforcement officers is valid when based upon the consent of a third party whom the police, at the time of entry, reasonably believe to possess common authority over the premises, but who in fact does not have such authority.

■ "The government has the burden of proving the effectiveness of a third party's consent." *United States v. Salinas–Cano,* 959 F.2d 861, 864 (10th Cir.1992) (*citing Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990)

and *United States v. McAlpine,* 919 F.2d 1461, 1463 (10th Cir.1990)).

### Inevitable Discovery

Evidence obtained illegally and subject to exclusion can be introduced at trial if the prosecution can show that, absent the illegality, an independent investigation inevitably would have led to discovery of the evidence through lawful means. *See Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). In *United States v. Larsen,* 127 F.3d 984, 986 (10th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1105, 140 L.Ed.2d 159 (1998), the Tenth Circuit concluded that "the inevitable discovery exception applies whenever an independent investigation inevitably would have led to discovery of the evidence, whether or not the investigation was ongoing at the time of the illegal police conduct."

### Findings of Fact

Officers participating in Creech's arrest and the search of his apartment testified during the December 9, 1998, hearing. Creech did not testify, proceeding only by proffer.

On August 3, 1998, law enforcement officers came to the exterior of the apartment building where Creech resided with the hope of arresting him on outstanding warrants for robbery and other crimes occurring during the robbery. The officers also hoped to obtain Creech's consent to search his apartment for the stolen goods.[1] The officers encountered Creech as he was exiting the building. Creech was not surprised by the officers appearance to arrest him. Creech was placed under arrest but was not read his *Miranda* rights.

Although arrested, Creech was not placed in handcuffs. The officers asked Creech if they could take him inside his apartment. Outside Creech's apartment, officers also asked Creech if they could search his apartment. Creech asked the

officers what would happen if he did not consent to their request. The officers informed Creech that if he did not consent, they would then seek to obtain a search warrant for the apartment. Creech consented to the search of his apartment.

Inside the apartment, Creech was seated on his couch. Creech was still unhandcuffed. Detective Robinson told Creech that he did not have to talk if he did not want to. However, prior to reading the full *Miranda* warnings to Creech, Detective Robinson asked if any guns were present in the apartment. Creech said "Yes, there is a sawed-off shotgun in the closet wrapped in a green shirt." When officers started toward a door in the living room which appeared to be a closet, Creech said something to the effect, "no not that closet, the one in the bedroom." While officers ventured into the bedroom to retrieve the weapon, Creech sat on the couch under the guard of Officer Obregon. During that time, Creech, in response to no question, stated that he "had gotten a deal" on the weapon and that the weapon "could cut a man in half." Officers secured the weapon and ultimately it was seized.

Upon discovery of the shotgun, Creech was fully advised of his *Miranda* rights. At that point, Creech stated he would possibly like to speak to an attorney or to his dad. Upon hearing Creech's statement that he might want to speak to an attorney, Detective Robinson immediately stopped asking questions and rose to withdraw from the conversation. As Detective Robinson backed away, he informed Creech that he would be asking no more questions. Creech was informed that he could make a phone call when he arrived at police headquarters. Without any prompting, Creech indicated that he wanted to cooperate and wished to talk further with the police. Throughout the remainder of the search of his apartment, Creech

---

**1.** None of the crimes which gave rise to the issuance of the warrants for Creech's arrest involved the use or possession of the sawed-

off shotgun seized during the search of the defendant's apartment.

repeatedly requested to speak to Detective Robinson.

United States Deputy Marshal Darin Weber, a member of the fugitive task force who was present at the scene, after first reminding Creech of *Miranda* warnings, directly asked Creech if the sawed-off shotgun belonged to him, to which Creech responded "yeah."

During the search of the apartment, Creech's roommate arrived and gave the police permission to search the apartment.

After the search of the apartment was completed, Creech was taken to police headquarters. At the headquarters, Creech was read his *Miranda* rights a second time. Detective Robinson reminded Creech that he had previously indicated that he wanted to speak to an attorney. Creech said he did not want to speak to an attorney. During his subsequent interview with officers, Creech said "very little" about the shotgun. However, Creech admitted to having committed the robberies which had been the original reason he had been placed under arrest. The government has indicated that it has no interest in introducing incriminating statements about the robberies at Creech's trial for possession of the sawed-off shotgun.

## Analysis

■ The court denies the defendant's motion to suppress the search of his apartment. Under the totality of circumstances, it is clear that the defendant's consent to search was voluntary. The defendant is a single male and was nineteen years old at the time of his arrest. Despite his youth, the defendant was fully capable of either granting or denying the officers' request to search his apartment. The defendant voluntarily chose the former, granting the officers permission to search his apartment and even spontaneously offering assistance to the officers conducting the search. Creech's consent to search was not the product of physical mistreatment, the use of violence or threats of violence, promises or inducements or deception or trickery. Instead, officers simply asked the defendant for permission to search the apartment and the defendant granted consent.

Even based upon the defendant's own proffer, the defendant's consent to the search would appear voluntary. The government correctly notes that the defendant understood from his own question that he could have rejected the officers' request to search. From his initial encounter with the officers, the defendant expressed a willingness to cooperate with them in their investigation of the robberies.

Contrary to the defendant's suggestion, the fact that officers told him that they would seek to obtain a search warrant if he did not consent to the search does not render his consent involuntary:

It is well-settled that the agent's statements to the effect that he would obtain a warrant if [the defendant] did not consent to the search does not taint [the defendant's] consent to a search. In *United States v. Blanco*, 844 F.2d 344, 351 (6th Cir.), *cert. denied*, 486 U.S. 1046, 108 S.Ct. 2042, 100 L.Ed.2d 626 (1988), this Court affirmed a district court's ruling that a consent to search was voluntary, even though the investigating agent informed the suspect that if he refused to sign a search to consent form, the agent would attempt to secure a search warrant. *See also, United States v. Watson,* 117 F.3d 1421, 1997 WL 377035, * 3 (6th Cir.) (unpublished disposition), cert. denied, —— U.S. ——, 118 S.Ct. 393, 139 L.Ed.2d 307 (1997) ("Notifying a person that a warrant can be obtained does not render consent involuntary unless the threat to obtain the warrant is baseless.") (*citing United States v. White,* 979 F.2d 539, 542 (7th Cir.1992) ("When the expressed intention to obtain a search warrant is genuine ... and not merely a pretext to induce submission, it does not vitiate consent.")); *United States v. Evans,* 27 F.3d 1219, 1231 (7th Cir.1994) (consent to search was not tainted because agents informed consentee that they would obtain a warrant if he would not consent);

*United States v. Duran*, 957 F.2d 499, 502 (7th Cir.1992); *United States v. Hummer*, 916 F.2d 186, 190 (4th Cir. 1990), *cert. denied*, 499 U.S. 970, 111 S.Ct. 1608, 113 L.Ed.2d 670, abrogated on other grounds, 96 F.3d 102 (4th Cir. 1996) ("The fact that a search warrant is mentioned 'does not necessarily constitute a coercive factor negating consent.' ") (*quoting United States v. Vasquez*, 638 F.2d 507, 528–29 (2nd Cir. 1980), *cert. denied*, 450 U.S. 970, 101 S.Ct. 1490, 67 L.Ed.2d 620 (1981)); *United States v. Kaplan*, 895 F.2d 618, 622 (9th Cir.1990) ("consent is not likely to be held invalid where an officer tells a defendant that he could obtain a search warrant if the officer had probable cause upon which a warrant could issue"); *United States v. Dennis*, 625 F.2d 782 (8th Cir.1980).

*United States v. Salvo*, 133 F.3d 943, 954 (6th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 1805, 140 L.Ed.2d 943 (1998).

The defendant's counsel also suggested that instead of asking the defendant for permission to search his apartment, the police should have immediately taken him down to headquarters, instead forcing the police to seek a search warrant. The court rejects this suggestion as a basis for suppression. A search authorized by consent is wholly valid and is a well-recognized exception to the Fourth Amendment's prohibition against warrantless searches. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Having concluded that the defendant's consent to search was voluntary, there is no reason to suppress the fruits of that search.

In short, the court finds that the government has produced clear and positive testimony that the defendant's consent was unequivocal, specific, and freely given, and that his consent was given without duress or coercion, express or implied.

Although unnecessary to its decision, even if Creech or his roommate had not consented to the search of the apartment, the government has demonstrated that officers would have in all likelihood obtained a search warrant for the defendant's apartment based upon the information available to them regarding the robberies.

The defendant's motion to suppress the fruits of the search of his apartment is denied.

**Motion to Suppress Statement. (Dk.25).**

The defendant seeks an order suppressing the statements he allegedly made following his arrest on August 3, 1998. Following his arrest, Creech was taken into his apartment and detained. Detective Robinson's report states that he "began informing the defendant that he did not have to answer any questions." According to the defendant, Detective Robinson questioned him about stolen property and asked whether there was a firearm in the apartment. Creech then allegedly made statements informing the officers of the location of the firearm which is the subject of this indictment. At that point Detective Robinson advised Creech of his *Miranda* rights.

According to Creech, despite his request to speak with an attorney, the questioning continued. His request to speak to an attorney was ignored. Creech seeks to suppress his statements as the product of a custodial interrogation in violation of his *Miranda* rights.

The government opposes the defendant's motion, arguing that Creech's statements "were either made pursuant to the public safety emergency exception, or were volunteered by the defendant. Other statements were made by the defendant after he had been advised of his rights and had waived the same." According to the government, Creech's request to speak to an attorney were honored, but that Creech decided to go ahead and speak to the officers. In short, the government contends that no *Miranda* violation occurred.

According to the government's brief,
Detective Robinson asked the defendant, while he sat unhand cuffed (sic) on the couch of his residence, whether there

were any weapons in the apartment. This line of questioning is clearly that contemplated by *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). When the officers began to go to the wrong closet, the defendant corrected them in a volunteered statement. The defendant later made a volunteered statement to Officer Obregon that the weapon would cut a man in half, and that he had gotten a good deal on the weapon. Later statements by the defendant about the weapon were made after the giving of the *Miranda* rights and the waiver noted by Detective Robinson in his reports.

Government's Brief (Dk.27) at 2.

### Legal Standards

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." "These safeguards include certain rights that an accused must be informed of and must waive before custodial interrogation can commence." *United States v. Bautista,* 145 F.3d 1140, 1146 (10th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 255, 142 L.Ed.2d 210 (1998). Specifically,

> [a suspect] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda,* 384 U.S. at 479, 86 S.Ct. 1602. "Only if there is a voluntary, knowing, and intelligent waiver of these rights can authorities question a suspect without counsel being present and introduce at trial in the case-in-chief any statements made during the interrogation." *Bautista,* 145 F.3d at 1146.

"In *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court added a second layer of prophylaxis to the *Miranda* right to counsel," *Bautista,* 145 F.3d at 1146, holding that a suspect who has "expressed his desire to deal with the police only through counsel is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication."

■ "[T]wo requirements must be met before *Miranda* is applicable; the suspect must be in 'custody,' and the questioning must meet the legal definition of 'interrogation.'" *United States v. Ritchie,* 35 F.3d 1477, 1484 (10th Cir.1994) (*quoting United States v. Perdue,* 8 F.3d 1455, 1463 (10th Cir.1993)).

### Interrogation

■ For purposes of *Miranda,* interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980).

### Voluntary, Spontaneous Statements

■ "If a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible." *United States v. Muniz,* 1 F.3d 1018, 1022 (10th Cir.), *cert denied,* 510 U.S. 1002, 114 S.Ct. 575, 126 L.Ed.2d 474 (1993). *See Miranda,* 384 U.S. at 478, 486, 86 S.Ct. 1286 ("Volunteered statements of any kind are not barred by the Fifth Amendment."); *see Innis,* 446 U.S. at 300–02, 100 S.Ct. at 1689–90; *United States v. Thomas,* 1995 WL 106411, at *5 (D.Kan. Feb.13, 1995) ("A suspect's unsolicited and voluntary comments during a search are not the

**1230**

product of interrogation barred by the Fifth Amendment.")

## Custody

 "A person is 'in custody' for the purposes of *Miranda* if he 'has been deprived of his freedom of action in any significant way,' *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612, or his freedom of action has been curtailed to a 'degree associated with a formal arrest,' *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam)." *Ritchie*, 35 F.3d at 1477. "A person has been taken into police custody whenever he 'has been deprived of his freedom of action in any significant way.'" *Perdue*, 8 F.3d at 1463 (*quoting Miranda*, 384 U.S. at 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). "The only relevant inquiry is 'how a reasonable man in the suspect's position would have understood his situation.'" *United States v. Robertson*, 19 F.3d 1318, 1321 (10th Cir.1994) (*quoting Perdue*, 8 F.3d at 1463) (*quoting Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984)), *cert. denied*, 513 U.S. 906, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994). In deciding this issue, the court may consider whether agents restrained the defendant's liberty by means of physical force or show of authority. *See United States v. Pena*, 920 F.2d 1509, 1515 (10th Cir.1990), *cert. denied*, 501 U.S. 1207, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991).

## Public Safety Exception

██ In *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), the Supreme Court created a " 'public safety' exception" to the *Miranda* warning requirement. 467 U.S. at 655, 104 S.Ct. 2626. The Court held that the "prophylactic" rule in *Miranda* is outweighed by the "paramount" concern for public safety when there is "an objectively reasonable need to protect the public or police from any immediate danger." 467 U.S. at 653, 659 n. 8, 104 S.Ct. 2626. The Court recognized that the giving of the *Miranda* warning in such circumstances might deter people from disclosing the concealed gun's location. 467 U.S. at 657, 104 S.Ct. 2626.

In *Quarles*, officers received information that a rape suspect was in a local supermarket and that the suspect was carrying a gun. 467 U.S. at 651–52, 104 S.Ct. 2218. When the suspect saw one of the officers enter the store, he ran to the rear of the store and was chased by the officer. The officer lost sight of the suspect for several seconds at the end of an aisle. Once the officer again saw the suspect, he ordered the suspect to stop and put his hands above his head. The defendant complied, and the officer frisked the defendant finding an empty gun holster. After handcuffing the defendant, the officer asked the defendant about the location of the gun, and the defendant nodded in the area of some cartons and said: " '[t]he gun is over there.'" 467 U.S. at 652, 104 S.Ct. 2626. The officer then retrieved a loaded revolver from one of the cartons.

In concluding that the concern for public safety outweighed the prophylactic rule in *Miranda*, the Court observed:

Here, had *Miranda* warnings deterred Quarles from responding to Officer Kraft's question about the whereabouts of the gun, the cost would have been something more than merely the failure to obtain evidence useful in convicting Quarles. Officer Kraft needed an answer to his question not simply to make his case against Quarles but to insure that further danger to the public did not result from the concealment of the gun in a public area.

467 U.S. at 657, 104 S.Ct. 2626. The officer was "confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket." 467 U.S. at 657, 104 S.Ct. 2626. The concealed gun posed more than one possible danger to the public: "an accomplice might make use of it, a customer or employee might later come upon it." *Id.*

Whatever the motivation of individual officers in such a situation, we do not believe that the doctrinal underpinnings of *Miranda* require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety. 467 U.S. at 656, 104 S.Ct. 2626. The Court concluded that "the need for answers in a situation posing a threat to public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment right against self-incrimination." 467 U.S. at 657, 104 S.Ct. 2626. In devising an exception designed "to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront," the Court emphasized the distinction between questions necessary to secure the safety of police officers and the safety of the public and questions designed to elicit testimonial evidence. 467 U.S. at 658, 104 S.Ct. at 2633 (*quoting Dunaway v. New York*, 442 U.S. 200, 213–14, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979)).

In determining whether the public safety exception applies, "[t]he court should not look at the subjective motivation of the individual officer, but must examine whether the facts gave rise to an objective belief that the public safety was threatened by an 'immediate danger.'" *United States v. Redmond*, 132 F.3d 44 (10th Cir. 1997) (Table; available on Westlaw at 1997 WL 767555) (*citing Quarles*, 467 U.S. at 655–56, 659 n. 8, 104 S.Ct. 2626). *See United States v. Carrillo*, 16 F.3d 1046, 1049 (9th Cir.1994) "(In determining whether the public safety exception to *Miranda* applies, 'we ask whether there was an objectively reasonable need to protect the police or the public from any immediate danger.' ") (*quoting United States v. Brady*, 819 F.2d 884, 888 n. 3 (9th Cir. 1987) (*quoting Quarles*, 467 U.S. at 659, 104 S.Ct. at 2649), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988)).

**Analysis**

 Based upon its consideration of the evidence presented, the court concludes that Detective Robinson's questions to Creech regarding the presence of weapons inside his apartment fall within the public safety exception to *Miranda*. At the time that Detective Robinson asked Creech if any weapons were present in the apartment, neither the apartment nor the couch on which Creech was sitting had been searched for weapons. Although several officers were present in the room, Creech was not handcuffed and it was possible that a weapon was within his reach. Under these circumstances, the court finds that there was an objectively reasonable need to protect the police officers that warranted the inquiry. *Compare United States v. Chan*, 901 F.Supp. 480, 485 (D.Mass.1995) ("public safety exception" applied even though defendant handcuffed and surrounded by at least two agents) with *United States v. Mobley*, 40 F.3d 688 (4th Cir.1994) (violation of defendant's right to speak to an attorney not warranted under "public safety exception" where no circumstances posing an objective danger to the public or police), *cert. denied*, 514 U.S. 1129, 115 S.Ct. 2005, 131 L.Ed.2d 1005 (1995); *United States v. Rodriguez*, 931 F.Supp. 907, 911 (D.Mass. 1996) ("public safety exception" to *Miranda* not applied where three suspects in custody and apartment thoroughly secured). The fact that the defendant was not handcuffed makes it more likely that he might have access to a gun secreted within the apartment or within his reach. In sum, the court finds that the government has demonstrated that there existed an objective danger to the officers' safety at the time Creech was asked if any weapons were present in the apartment.

Moreover, the government correctly suggests that some of the defendant's statements were spontaneous, unsolicited, and were not the product of any interrogation. First, when officers began to search the wrong closet, the defendant indicated

to the officers that they were headed to the wrong area. Opening the door to the closet near the couch was not an action which the officers should have known was reasonably likely to elicit an incriminating response from the suspect. Second, while seated on the couch in his own apartment and without any prompting of any sort, the defendant volunteered to Officer Obregon that he had "gotten a deal" on the gun and that it "could cut a man in half." Those spontaneous statements are undoubtedly admissible against the defendant.

■ The issue of whether law enforcement officers should have continued to interrogate Creech after the defendant stated that he "would possibly like to speak to an attorney" is one which must be analyzed in light of the Supreme Court's decision in *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). In *Davis*, Robert L. Davis was suspected of beating a sailor to death with a pool cue outside a club on the Charleston Naval Base. Based upon information collected, Davis was interviewed at the Naval Investigative Service. After being advised of his *Miranda* rights, Davis waived those rights both orally and in writing. About an hour and a half into the interview, Davis said "Maybe I should talk to a lawyer." The Supreme Court found that the defendant's statement was not an unambiguous request for counsel, and therefore the government agents were free to continue questioning the defendant. "If the suspect's statement is not an unambiguous request or unequivocal request for counsel, the officers have no obligation to stop questioning him." 512 U.S. at 461, 114 S.Ct. at 2356, 129 L.Ed.2d at 373. Although it would have been entirely proper for the agents to ask questions clarifying the meaning of the defendant's statement, the Supreme Court declined to adopt a rule requiring officers to ask clarifying questions. 512 U.S. at 461, 114 S.Ct. at 2356, 129 L.Ed.2d at 373.

The court concludes that Creech's indication that he "would possibly like to speak to an attorney" is at best an ambiguous request to speak to counsel. *Cf. United States v. Sanchez*, 866 F.Supp. 1542, 1559 (D.Kan.1994) (defendant's statement "I can't say nothing" ambiguous invocation of right to remain silent). Any ambiguity was clarified by Creech after Detective Robinson terminated his interrogation and the defendant unambiguously stated that he wanted to cooperate and that he did not want to speak to an attorney before continuing to talk with Detective Robinson. At headquarters, given another opportunity to invoke his right to counsel, the defendant again stated that he did not want to speak to an attorney. Under these circumstances, law enforcement officers were free to continue questioning the defendant without violating his constitutional rights.

The defendant's motion to suppress his post-arrest statements is denied in part on the merits and denied in part as moot. All of the defendant's statements regarding the location of the sawed-off shotgun, his purchase and ownership of the gun and its efficacy as a weapon are admissible against the defendant at trial. In light of the government's agreement that it will not seek to introduce any of the defendant's admissions concerning the robberies, the defendant's motion to suppress those statements is denied as moot.

**Motion for Disclosure of 404(b) evidence. (Dk.26).**

The defendant asks the court for an order requiring the government to disclose any prior convictions or other crimes wrongs or acts that it intends to introduce at trial under Fed.R.Evid. 404(b). The government has no objection to this motion.

This motion is granted as uncontested. The government shall provide the defendant with notice of evidence it intends to offer at trial under Rule 404(b).

IT IS THEREFORE ORDERED that the defendant's "Motion to Suppress Evidence" (Dk.24) is denied.

IT IS FURTHER ORDERED that the defendant's "Motion to Suppress State-

ment" (Dk.25) is denied in part on the merits and denied in part as moot. All of the defendant's statements regarding the location of the sawed-off shotgun, his purchase and ownership of the gun and its efficacy as a weapon are admissible against the defendant at trial. In light of the government's agreement that it will not seek to introduce any of the defendant's admissions concerning the robberies, the defendant's motion to suppress those statements is denied as moot.

IT IS FURTHER ORDERED that the defendant's "Motion for Disclosure of 404(b) evidence" (Dk.26) is granted as uncontested. The government shall provide the defendant with notice of evidence it intends to offer at trial under Rule 404(b).