**Paul Donald ALLEN, Petitioner–
Appellant,**

v.

**Ernie ROE, Warden; Bill Lockyer, Attorney General of the State of California,\* Respondents–Appellees.**

No. 01–17010.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 14, 2002.

Filed Sept. 24, 2002.

---

\* Ernie Roe is substituted as Warden, and Bill Lockyer is substituted as the Attorney General of the State of California. *See* Fed. R.App. P. 43(c)(2).

Ann McClintock, Assistant Federal Public Defender, Sacramento, CA, for the petitioner-appellant.

Jo Graves, Senior Assistant Attorney General, John G. McLean, Supervising Deputy Attorney General, and Harry Joseph Colombo (argued), Deputy Attorney General, Sacramento, CA, for the respondents-appellees.

Before HAWKINS and FISHER, Circuit Judges, and MOSKOWITZ,** District Judge.

## OPINION

MICHAEL DALY HAWKINS, Circuit Judge.

Paul Donald Allen ("Allen") appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. Allen challenges his California state conviction and thirty-two year sentence for first degree murder, using a firearm in the commission of the murder, and being a felon in possession of a firearm. Allen contends that his post-arrest statements concerning the shooting, as well as the gun he used, were obtained in violation of *Mi-*

---

** The Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation.

*randa v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and therefore should have been suppressed. Because we conclude that the "public safety exception" of *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), applies to the facts of this case, we affirm the district court's denial of Allen's § 2254 petition.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night of September 9, 1990, Sacramento Police Officer Haynes responded to a report that a father had shot his son. Haynes arrived at the intersection of East Levee Road and Northgate Boulevard, and was met by Leon Danker, an eyewitness to the shooting. Danker informed Haynes that he heard gunshots, and later saw that the victim's head was bleeding.

Danker, who was homeless, led Haynes to his campsite. Allen's son, Steve, was there, lying in a sleeping bag with his head in a pool of blood from a gunshot wound to the head. Danker's campsite was located under a tree and was covered by bushes. Allen lived in a nearby campsite. Officer Haynes was soon after joined by Officer Hill and a police dog. They searched the campsites and nearby vicinity, but were unable to find Allen or the gun.

Officers Miller and Louie heard a broadcast of the shooting and description of Allen. As these officers searched along Del Paso Boulevard, they observed Allen at a gas station pay-phone, about a mile and a half from the crime scene. The officers took him into custody, but did not inform him of his *Miranda* rights. They performed a pat down search of Allen and found a kitchen knife in his right front pants pocket. A search of the immediate area and the phone booth did not reveal any other weapons, but an open twelve-pack of beer was found on the ground near where Allen was arrested.

Officers Hahn and Martin, who had been at the crime scene, went to assist Officers Louie and Miller. After Allen was identified by Danker, Officers Hahn and Martin took custody of Allen, and escorted him back to the crime scene. They did not give Allen *Miranda* warnings, but while in the police car, Officer Martin stated to Allen that "the weapon used was supposedly a gun," but that no gun had been found. The officer then told Allen that "if the wrong person found the gun, it could hurt someone else."

Upon arriving at the crime scene, the following conversation took place between Allen and Officer Martin:

Allen: How is he? Is he going to make it?

Officer: I don't know.

Allen: I want to go see the body. He's not supposed to die.

Officer: I can't do that. The body is at UCD Med Center.

Allen: Is he still alive? Just tell me he is still alive.

Officer: I don't know. As far as I know, he is.

Allen: I think I can show you where the gun is.

Officer: Will you try? If not, someone can get hurt with that same gun.

Allen: I'm not positive because I blacked out, but I am pretty sure I can. If you and maybe one other officer go with me, I'll try. We have to walk. Its [sic] about 20 to 30 minutes [sic] walk from here. Tell me my son is not going to die. He's not supposed to die.

Officer: At this point he's being worked on at the Med Center. What his condition is, I don't know.

Allen: I don't want this to happen to someone else. I think I can show you. The gun is in a black backpack. We have to start at the bridge on Northgate south of the levee.

Allen then led the officers along a bike trail to its end. The trail ran along a canal and led towards Del Paso Boulevard. The area was mainly uninhabited, with some warehouses and businesses that were closed during the time of the incident. Allen informed them that his backpack was somewhere between the end of the trail and the area east of the levee and Northgate Boulevard. The officers ultimately found Allen's backpack, with the gun inside, in plain view on the side of the trail.

Prior to trial, Allen moved to suppress the statements he made and the gun recovered as a result of those statements. Allen claimed that he was subjected to custodial interrogation without being informed of his *Miranda* rights. In response, the state argued that Allen's *Miranda* rights were not violated because the public safety exception of *Quarles* applied. Following a suppression hearing based on an oral stipulation of facts, the trial court ruled that because the public safety exception applied, it would not suppress either Allen's statements or the gun.

At trial, Allen was convicted of first degree murder and using a firearm during the commission of the murder. Allen had also pled guilty, pre-trial, to being a felon in possession of a firearm. The trial court imposed a total sentence of thirty-two years to life imprisonment. Allen's conviction was affirmed by the California Court of Appeal, which concluded that the trial court correctly applied *Quarles* in finding that Allen's *Miranda* rights were not violated. The California Supreme Court denied review. Allen's state habeas corpus petitions were denied by the California Court of Appeal and the California Supreme Court.

On November 19, 1993, Allen filed his original § 2254 petition in the district court. An amended petition was filed on November 14, 1997, and was denied on July 31, 2001. Allen filed a timely notice of appeal and request for a certificate of appealability, which the district court granted as to the *Miranda* claim.

## ANALYSIS

### I. Standard of Review

The district court's denial of a § 2254 petition is reviewed de novo; however, its factual findings are reviewed for clear error. *Bonin v. Calderon*, 59 F.3d 815, 823 (9th Cir.1995). A § 2254 petition may be granted only on the ground that the petitioner is in state custody in violation of federal law. *Id.* at 823.

Because Allen filed his § 2254 petition prior to the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA),[1] review of his petition is governed by pre-AEDPA law.[2] *See Mancuso*

---

1. Because the district court retained jurisdiction over Allen's original 1993 petition, it is not problematic that the amended petition was filed after the effective date of the AEDPA. *See Henry v. Lungren*, 164 F.3d 1240, 1241 (9th Cir.1999).

2. Allen argues that the district court erroneously applied a post-AEDPA deferential standard, instead of a pre-AEDPA independent standard of review, in analyzing his *Miranda* claim. Although the language of the district court's decision is somewhat ambiguous, it appears that it applied the correct pre-AEDPA standard. Nonetheless, even if the district court did apply the incorrect standard, it would not affect the outcome of this appeal

v. Olivarez, 292 F.3d 939, 949 (9th Cir. 2002). Accordingly, we review the state court's determination of mixed questions of law and fact de novo. See Mayfield v. Woodford, 270 F.3d 915, 922 (9th Cir.2001) (en banc). Whether the public safety exception applies is a mixed question of law and fact, therefore it is reviewed de novo. United States v. Brady, 819 F.2d 884, 886 (9th Cir.1987). However, the state court's findings of fact are given a presumption of correctness. Robinson v. Borg, 918 F.2d 1387, 1390 (9th Cir.1990).[3]

## II. Discussion

Because he was not informed of his Miranda rights, Allen contends that the trial court erred by failing to suppress his statements regarding the shooting and location of the gun, and the actual gun obtained as a result of his cooperation. The state asserts that the police were justified in not informing Allen of his Miranda rights before questioning him about the gun because of their reasonable concern for the public's safety. However, Allen argues that the area involved was isolated, therefore there was no reasonable public threat. Allen's contention fails.

■■■ Miranda warnings are required when a defendant is subjected to custodial interrogation. Brady, 819 F.2d at 887. However, under the public safety exception, Miranda warnings need not be given when "police officers ask questions reasonably prompted by a concern for the public safety." Quarles, 467 U.S. at 656, 104 S.Ct. 2626.[4] In order for the public safety exception to apply, there must have been "an objectively reasonable need to protect the police or the public from immediate danger." United States v. Carrillo, 16 F.3d 1046, 1049 (9th Cir.1994) (quotations and citations omitted). That is, the police must reasonably believe that there is a serious likelihood of harm to the public or fellow officers.

In this case, the parties do not dispute that Allen was subjected to custodial interrogation without prior Miranda warnings. See United States v. Wauneka, 770 F.2d 1434, 1438 (9th Cir.1985) (stating that Miranda is not implicated unless a defendant is subjected to custodial interrogation). The issue is whether the police were excused from giving the warnings to Allen.

■■■ Allen argues that because the areas of the crime scene and where the gun was found were isolated, and the public had

because we review de novo both the state court's decision and district court's decision.

3. Because the California Court of Appeal relied on facts that were beyond those stipulated to by the parties, we rely solely on the facts that were before the trial court at the suppression hearing. See Mayfield, 270 F.3d at 922 (stating that state court's factual findings are not presumed correct if they lack fair support in the record); Siripongs v. Calderon, 35 F.3d 1308, 1320 (9th Cir.1994) (stating that facts developed at pretrial suppression hearing are entitled to presumption of correctness).

4. We recognize that Quarles was decided before Dickerson v. United States, in which the Supreme Court held that Miranda announced

a constitutional rule of law. See Dickerson v. United States, 530 U.S. 428, 437–44, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). The rationale supporting Quarles' public safety exception has been, to some degree, called into question by Dickerson. See Quarles, 467 U.S. at 654, 656–57, 104 S.Ct. 2626 (stating that because Miranda was not constitutionally mandated, concern for the public's safety outweighed Miranda's prophylactic rule). However, because the Supreme Court has chosen not to overrule Quarles, we cannot ignore it. See United States v. Pacheco–Zepeda, 234 F.3d 411, 414–15 (9th Cir.) (stating that unless the Supreme Court expressly overrules its own decision, this court must follow the decision if it is controlling precedent), cert. denied, 532 U.S. 966, 121 S.Ct. 1503, 149 L.Ed.2d 388 (2001).

little access to them, it was not reasonable for the police to believe that the gun posed a real or imminent threat to the general public. However, the gun's actual location is irrelevant because the "objectively reasonable need" for protection is based on what the officers knew at the time of the questioning. *See Quarles*, 467 U.S. at 656–59, 104 S.Ct. 2626; *Carrillo*, 16 F.3d at 1049.

█ The police obviously did not know the gun's location when they asked Allen to help them find it. They knew that Allen used a gun to shoot his son at the campsite. The police arrested Allen at a payphone, located at a gas station in a developed area, after he had apparently bought a twelve-pack of beer. The arrest scene was about one and a half miles from the campsite. The police knew the gun was not at the campsite and that it was not in Allen's possession when he was arrested. Therefore, based on what the police did know, the gun could have been anywhere between the campsite and the arrest scene, including the gas station or even the store where Allen may have bought the beer. Like the situation in *Quarles*, it was reasonably possible that anyone could have found the gun and used it. *See Quarles*, 467 U.S. at 657, 104 S.Ct. 2626. It was therefore objectively reasonable for Officer Martin to believe that there was a need to protect the safety of the public. *See id.* at 658–59, 104 S.Ct. 2626.

Allen also argues that a significant amount of time had elapsed from when the shooting occurred to when the police questioned him, therefore there was no real or imminent threat to the general public. This argument misses the point. If the gun was discarded in a public place, it posed a continuing immediate danger because anyone could have found the gun at any time. Moreover, the danger posed by the gun does not dissipate over time. *Cf. Brady*, 819 F.2d at 888 (concluding that officer's question regarding a gun was justified because the danger of someone else seizing the gun had to be neutralized).

█ Finally, even though the officer's subjective motivation does not affect whether the public safety exception applies, there was no indication that the officer's questioning was intended to elicit incriminating evidence. *See id.* at 888 n. 3. This further bolsters our conclusion that the officer's questioning was objectively reasonable in order to ensure the public's safety. *See Carrillo*, 16 F.3d at 1050. In fact, the record of the suppression hearing does not show that Martin asked Allen any further questions after the gun was retrieved. The officer did not ask Allen why he shot his son, or any other questions regarding the crime. The questioning was limited to finding the gun and was not investigatory. *See id.*

## CONCLUSION

On the facts known to Officer Martin, we conclude that he reasonably believed that the gun posed a serious likelihood of harm to the public or fellow officers. His questioning of Allen was prompted by a reasonable concern for public safety, therefore *Miranda* warnings and suppression of Allen's statements and the gun were not required. Accordingly, we affirm the district court's denial of Allen's habeas petition.

**AFFIRMED.**