**Calvin H. DYSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 00–CM–634.**

District of Columbia Court of Appeals.

Submitted Dec. 18, 2001.

Decided Jan. 23, 2003.

Robert J. Dowlut, appointed by the court, was on the brief for appellant.

Kenneth L. Wainstein, United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., and Mark J. Lesko, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY and RUIZ, Associate Judges, and NEBEKER, Senior Judge.

TERRY, Associate Judge:

This case involves the public safety exception to the *Miranda* rule,[1] as established by the Supreme Court in *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). Appellant Dyson was convicted of possession of marijuana. Before trial, he moved to suppress an inculpatory statement he made to the police in response to a question about a gun that he was suspected of carrying. The trial court denied the motion on the ground that the statement was made in response to a question within the public safety exception. Dyson now challenges that ruling. We affirm.

I

Officers John Alioto and Jeffrey Dixon were patrolling near North Capitol and S Streets in the early morning hours of Oc-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

tober 23, 1999. After turning east onto S Street from North Capitol Street, Alioto noticed Dyson suspiciously ducking his head behind a car. Officer Alioto told Officer Dixon first to stop the police car and then to shift it into reverse. When Dyson began walking westbound on S Street, Officer Alioto got out of the car and told him to stop. Dyson, however, dropped a crumpled-up paper bag in the tree box area between the curb and the sidewalk, and then started to run. After taking note of where the bag landed, Alioto began to chase Dyson.

Dyson crossed North Capitol Street at S Street, ran north on North Capitol Street for one block, turned left on Seaton Place, and then turned right (north again) into the first alley off Seaton. During the chase, Officer Alioto saw Dyson "tugging at his waistband," which caused the officer to suspect that Dyson had a gun. Officer Alioto also stated that he thought he "saw the butt of a handle of a gun."[2] He broadcast his suspicions about the gun over the police radio while he continued to chase Dyson.

When Dyson turned into the alley, Officer Alioto lost sight of him. He sealed off the alley and began to search it. Dyson, who was hiding in the alley, attempted to escape by running back out, but was apprehended by Officer Dixon.[3] Dyson was immediately searched, but no gun was found. Other officers, including a canine unit, then cordoned off the alley and began to look for the gun that Officer Alioto suspected Dyson of possessing.

While the other officers were searching the alley, Officers Dixon and Alioto went back to S Street to retrieve the paper bag that Dyson had dropped. They found the bag in the same spot where it had fallen, and inside it they discovered six blue ziplock bags of what was later determined to be marijuana. Officers Dixon and Alioto then returned to the alley where Dyson had been arrested. Officer Alioto approached Dyson, who was seated in the transport vehicle, and asked him where the gun was. Alioto said, "If there's a gun, we need to find it, so no little kids get it and hurt themselves." Dyson responded, "That was my weed, but I don't have a gun." At that point Dyson had not been read his *Miranda* rights.

Just before trial, Dyson made an oral motion to suppress his statement.[4] At the suggestion of defense counsel, the court agreed to begin the trial and make a ruling on the motion after hearing the testimony of Officer Alioto instead of holding a separate suppression hearing. After Alioto testified, the court ruled that, although Dyson was in custody at the time he was asked about the gun, his response was admissible under the "very narrow" public safety exception described in *New York v. Quarles*. The court found that Officer Alioto had a good faith belief that Dyson had a gun and that he had a reasonable basis for that belief. The court noted its concern about "whether the officer's belief that there's a gun has to be based on stronger objective evidence, either direct or circumstantial," but nevertheless concluded:

---

2. Officer Alioto made this statement on redirect examination at trial, after the court had already ruled on the suppression motion, but the court allowed it and gave defense counsel the opportunity "to cross-examine on it as if it were part of the motion."

3. Officer Dixon followed the chase in the police car and assisted Officer Alioto in searching the alley.

4. Although the government argued initially that the motion was made too late, it later withdrew that objection.

[T]he frequency of the coincidence of guns and drugs, coupled with Officer Alioto's observations as Mr. Dyson was running and his good-faith reasonable belief that Mr. Dyson might be concealing a gun as he ran, are sufficient, in my view, to permit at least one question and one direct question about the gun.

The court therefore denied the motion to suppress the statement ("That was my weed").

## II

■ In reviewing the denial of a motion to suppress evidence on *Miranda* grounds, we will defer to the trial court's factual findings unless they are clearly erroneous. We also view the facts in the light most favorable to the government, since it was the party prevailing in the trial court. We decide *de novo*, however, whether those facts establish a *Miranda* violation, because that is a question of law. *See Jones v. United States,* 779 A.2d 277, 281 (D.C. 2001) (en banc), *cert. denied,* 535 U.S. 906, 122 S.Ct. 1207, 152 L.Ed.2d 145 (2002); *Morris v. United States,* 728 A.2d 1210, 1215 (D.C.1999).

■ *Miranda* requires that once a suspect is in custody, any statement made to police in response to custodial interrogation must be suppressed unless the appropriate warnings have been given. *Rhode Island v. Innis,* 446 U.S. 291, 297–301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). In *New York v. Quarles,* however, the Supreme Court held that such statements need not be suppressed when the questioning concerns a threat to public safety.

In *Quarles* the police arrested a man in a grocery store after receiving a report that he had raped a woman and was carrying a gun. A search incident to that arrest revealed that he was wearing an empty gun holster. The police asked the man where the gun was before reading him his *Miranda* rights. He nodded in the direction of some empty cartons and said, "The gun is over there." The New York Court of Appeals suppressed the statement and the gun because *Miranda* warnings had not been given, but the Supreme Court reversed, holding that there was a public safety exception to *Miranda* when "the need for answers to questions in a situation posing a threat to the public safety outweighs the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Quarles,* 467 U.S. at 657, 104 S.Ct. 2626.

The Court noted that the exception was a narrow one, *id.* at 658, 104 S.Ct. 2626 and that its availability "does not depend upon the motivation of the individual officers involved." *Id.* at 656, 104 S.Ct. 2626; *cf. Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ("actual motivations" or "subjective intentions" of police officers "play no role" in determination of probable cause under Fourth Amendment). In a footnote, the Court suggested that the standard for applying the public safety exception is "an objectively reasonable need to protect the police or the public from any immediate danger associated with the weapon." *Quarles,* 467 U.S. at 659 n. 8, 104 S.Ct. 2626.

Since *Quarles,* courts have differed somewhat in their interpretation of the public safety exception and the extent to which they have applied it. *See United States v. Jones,* 154 F.Supp.2d 617, 624–627 (S.D.N.Y.2001) (noting uncertainty as to the interpretation of *Quarles* and surveying cases from several jurisdictions). Some courts have read *Quarles* narrowly. For example, in *United States v. Mobley,* 40 F.3d 688 (4th Cir.1994), *cert. denied,* 514 U.S. 1129, 115 S.Ct. 2005, 131 L.Ed.2d 1005 (1995), the court declared that, "[a]bsent other information, a suspicion that

weapons are present in a particular setting is not enough, as a general matter, to demonstrate an objectively reasonable concern for immediate danger to police or public." *Id.* at 693 n. 2. Other courts have read *Quarles* more broadly. The Seventh Circuit, for example, held in *United States v. Edwards,* 885 F.2d 377, 384 & n. 4 (7th Cir.1989), that police officers had an objectively reasonable basis for asking a suspected drug dealer about weapons simply because drug dealers are known to arm themselves.

This court thus far has applied the public safety exception in three cases. In *Edwards v. United States,* 619 A.2d 33 (D.C.1993), two police officers, responding to a complaint that a man with a rifle had chased another man down the street and threatened several other people, followed a man carrying a rifle into an apartment building. The officers detained him, but when one officer asked, "Where's the rifle?", he replied, "It ain't a rifle, it's a machete." At that point the defendant had not been advised of his *Miranda* rights. Another officer then searched the building and found the rifle in an empty apartment. We upheld the denial of a motion to suppress the defendant's statement on *Miranda* grounds. Relying on *Quarles,* and agreeing that the defendant "was in custody for *Miranda* purposes," *id.* at 36, we concluded that "[t]he police questions were clearly designed to investigate an unsettled situation, and were narrowly directed at ascertaining the location of the rifle and thereby protecting public safety." *Id.* at 37. We held that the officers

> had at least reasonable suspicion to follow and detain appellant briefly in order to question him.... The police had seen appellant walk down the hall with a rifle and then return without the rifle. As a result, the police knew that there was an unattended rifle, which had been used in

a recent crime, that could be found by someone else in the building, including a child, and used again to the detriment of the officers or the community.

*Id.* at 36 (citations omitted).

In *Trice v. United States,* 662 A.2d 891 (D.C.1995), we held that a response to a police question about a gun was admissible when a detective's "belief that the gun used in the crime might be in appellant's home was supported by strong circumstantial evidence" and "several small children" were seen in the home. *Id.* at 896. We noted that the public safety exception might be inapplicable "if, for example, it would be unreasonable under the circumstances to believe, objectively, that the police questions were prompted by a concern for public safety, rather than by the need for factual investigation." *Id.*

Most recently, in *Crook v. United States,* 771 A.2d 355 (D.C.2001), we held that an incriminating statement made in response to a police officer's question was admissible when the officer was trying to gather information about who had shot the defendant because the police were "dealing with the danger created by the possible presence of other armed and dangerous individuals in the immediate vicinity." *Id.* at 358. "The questions as a whole objectively reflected [the officer's] stated aim to ascertain and neutralize any threat posed by the other shooters in the altercation." *Id.* at 359.

Dyson argues that in this case, in contrast to *Edwards, Trice,* and *Crook,* there was no "objectively reasonable" basis for the question about the gun. He emphasizes that in those three cases the police had direct evidence that a gun was involved, but that no such evidence existed in this case, nor was a gun ever found to have existed. It is true that our previous cases dealing with the public safety excep-

tion have had stronger evidence of the existence of a weapon. In *Edwards,* for instance, the police actually saw Edwards walk into the apartment building with a rifle. *Edwards,* 619 A.2d at 34. In *Trice* the defendant had shot another man four days prior to his arrest, and the court determined that there was "strong circumstantial evidence" that the defendant still had the gun in his home. *Trice,* 662 A.2d at 896. In *Crook* the officer arrived on a scene where at least two people had been shot, and thus there was direct evidence that a gun had been used to commit a crime. *Crook,* 771 A.2d at 356–357. Even in *Quarles* the police had information that the defendant had a gun and found his holster empty upon his arrest. *Quarles,* 467 U.S. at 651–652.

■ But the failure to find an actual gun in this case is not dispositive. Officer Alioto's belief that Dyson had been carrying a gun was based on his observation of Dyson tugging at his waistband and his belief that he saw the butt handle of a gun. There was little information on the manner in which Dyson was tugging at his waistband or why that activity in itself led the officer to believe Dyson was armed. Given the opportunity to cross-examine the officer at trial, however, defense counsel was not able to elicit any evidence that Officer Alioto's perceptions were faulty, aside from the fact that no gun was found. Additionally, under the circumstances of the case—that Dyson was fleeing from a police officer late at night in order to avoid being caught with drugs—it was not unreasonable for Officer Alioto to interpret Dyson's waistband-tugging as a sign that he might be armed. The trial court found that the officer's suspicions were objectively reasonable, and, because we must view the facts in the light most favorable to the government, *Jones,* 779 A.2d at 281, we also conclude that Officer Alioto saw behavior that reasonably led him to believe Dyson was carrying a gun.[5]

Dyson also argues that there was not a legitimate threat to public safety after he was arrested because the alley where the police suspected the gun to be was sealed and cordoned off. In support of this argument, Dyson analogizes his arrest to the one that occurred in *United States v. Mobley.* In that case the police, armed with arrest and search warrants, conducted a drug raid on Mobley's home. Mobley answered the door naked and unarmed and was promptly placed under arrest. Police officers conducted a security sweep of the apartment and determined that Mobley was the only person present. An officer then asked Mobley whether there was anything in the apartment that would be a danger to agents conducting a more thorough search, and Mobley responded by telling them about a gun in one of the bedrooms. The court ruled that the police questioning did not fall within the public safety exception because there was nothing that distinguished the case from one involving an ordinary arrest. 40 F.3d at 693.

Dyson's comparison of this case to *Mobley* is unpersuasive. An arrest made after chasing an unknown person through public streets into an alley late at night is vastly different from an arrest pursuant to a warrant during a daytime drug raid on a suspect's apartment. Moreover, although the alley in this case was cordoned off from the public after the arrest, a gun hidden in the alley by Dyson could readily

---

**5.** Furthermore, although the motivation of the police officer is irrelevant, *see Quarles,* 467 U.S. at 656, 104 S.Ct. 2626 there was no indication that Officer Alioto was untruthful in his assertions. To the contrary, he was concerned enough that he notified other officers of his suspicions over the police radio.

have wound up in the hands of someone else, such as a neighborhood child playing in the alley, if it had escaped detection by the police. That was not the case in *Mobley*, in which the police had already ascertained that Mobley was the only person in the apartment at the time of the arrest, so that there was no further reason to suspect that anyone else would enter the apartment and find the gun.

Furthermore, the arrest in this case is factually closer to the arrest in *Edwards* than it is to the one in *Mobley*. In *Edwards* we held that there was a legitimate public safety concern when a gun was known to be located in an apartment building that was open to the public. *Edwards*, 619 A.2d at 37. Although the building was private, it was frequently broken into by vagrants, and the door to the apartment which the suspect had entered was missing the padlock that normally secured it. The unsecured apartment in *Edwards* is much more akin to the cordoned-off public alley in this case than Mobley's private and secured apartment.

### III

■ We hold that Officer Alioto had an objectively reasonable basis for suspecting that Dyson was carrying a gun and that the suspected presence of a gun hidden in an alley created a legitimate threat to public safety. The trial court properly relied on the *Quarles* public safety exception in denying Dyson's motion to suppress his statement. Dyson's conviction is

*Affirmed.*

RUIZ, Associate Judge, concurring:

The trial judge found appellant guilty of possessing marijuana on the strength of evidence separate from appellant's admission to having marijuana. That admission was in answer to the officer's question[1] while appellant was in custody but had not been given the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). I would affirm based on the trial judge's narrower ruling without reliance on the admission, and therefore, concur that the judgment should be affirmed. I disagree, however, with the majority's unnecessary analysis that the circumstances in this case come within the "narrow" public safety exception to *Miranda's* constitutional requirement that the Supreme Court recognized in *New York v. Quarles*, 467 U.S. 649, 658, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984).

*Quarles* established a "public safety exception" to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence, and held that the availability of that exception "does not depend on the motivation of the individual officers involved." *Id.* at 656–57, 104 S.Ct. 2626. The Court emphasized that in assessing whether a case comes within the public safety exception, the focus is on whether the officer is "reasonably prompted by a concern for the public safety." *Id.* at 657, 104 S.Ct. 2626. In holding that the situation faced by the officers came within the exception, the Court noted that the officers had "every reason to believe" that the suspect had a gun—a woman had just reported being raped at gunpoint by the suspect who was apprehended within minutes wearing an empty gun holster—and had just discarded it in the supermarket where the rape, chase and arrest took place. Thus, the officers had an

---

[1]. The officer testified that after appellant had been arrested, handcuffed, and put into a police cruiser, he "asked the defendant where the gun was. If there's a gun, we need to find it, so no little kids get it and hurt themselves." According to the officer, appellant said: "That was my weed, but I didn't have a gun."

"immediate necessity" of locating the gun in order to avoid danger to the public safety. *Id.* The Court addressed the concern that the exception would "lessen the clarity" of the *Miranda* rule, stating that "in each case it will be circumscribed by the exigency which justifies it." *Id.* In *Quarles,* the distinction between questions permissible under the public-safety exception and impermissible questions "designed solely to elicit testimonial evidence from a suspect" was demonstrated by the fact that the officer "asked only the question necessary to locate the missing gun before advising respondent of his rights. It was only after securing the loaded revolver and giving the warnings that he continued with investigatory questions about the ownership and place of purchase of the gun." *Id.* at 659, 104 S.Ct. 2626.

The facts in this case do not warrant a departure from the *Miranda* requirement, which, post-*Quarles,* the Supreme Court has held to be a constitutional rule. *See Dickerson v. United States,* 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).[2] First, although the trial judge credited that the officer had a "good faith reasonable belief" that appellant might be armed, that belief was based entirely on the officer's equivocal testimony that, as he was chasing appellant, appellant made a motion toward his waistband.[3] As the majority recognizes, that is much less evidence of the existence of a weapon than the Supreme Court considered in *Quarles* or that we have considered sufficient in our cases applying the public-safety exception to *Miranda.*[4] In addition, here there was no "immediate necessity" grounded in public safety to ask about the weapon that the officer thought appellant might have. Appellant was arrested in the early morning hours in a deserted alley. *Cf. Allen, supra* note 2, 305 F.3d at 1051 (noting that discovery of gun in a deserted area is irrelevant if at the time officers asked the question they thought it was "reasonably possible that anyone could have found the gun and used it" anywhere between a campsite and the arrest scene, including a gas station or store where the suspect had been seen). An immediate patdown of his person yielded no gun and the two officers who had chased and apprehended him briefly searched the alley—again finding no gun. They then left to retrieve a

2. In *Quarles,* the Court balanced the interest in public safety against *Miranda's* prophylactic rule, noting that *Miranda* warnings were not constitutionally mandated. *See* 467 U.S. at 654, 104 S.Ct. 2626. This has prompted one federal appellate court to note that "the *Quarles* rationale has been, to some degree, called into question by *Dickerson.*" *Allen v. Roe,* 305 F.3d 1046, 1050 & n. 4 (9th Cir. 2002). The Supreme Court's declaration in *Dickerson* that *Miranda* is indeed a constitutional rule does not mean that it is "immutable," *Dickerson,* 530 U.S. at 441, 120 S.Ct. 2326 but it cautions, at a minimum, that the *Quarles* exception be narrowly construed and strictly applied.

3. During cross-examination at trial, after the trial judge had denied appellant's motion to suppress his statement, the officer added that he "thought I saw a butt of a handle of a

gun," but then agreed when the prosecutor reminded him on redirect that what the officer had said was "that it looked like a gun or it could have looked like a pager, you weren't exactly sure."

4. *See Crook v. United States,* 771 A.2d 355, 359 (D.C.2001) (involving the risk to public safety from several armed people who just shot and wounded two others); *Trice v. United States,* 662 A.2d 891, 896 (D.C.1995) (noting the officer's objectively reasonable belief that a shotgun used in the commission of a crime several days earlier may still be in the perpetrator's home, thus posing a threat to small children there); *Edwards v. United States,* 619 A.2d 33, 37 (D.C.1993) (noting an appropriate concern for public safety in ascertaining the location of a missing rifle where the appellant had been seen by police carrying the rifle only moments earlier).

brown bag (later found to contain marijuana) they had seen appellant drop into a tree box during the chase. Meanwhile, other officers had cordoned off the alley and searched it with a K–9 unit, also finding no weapon. It was only after the two arresting officers returned with the bag of marijuana that they asked appellant, who by then had been handcuffed and placed in a patrol car, about the gun. Unlike in *Quarles* and our prior cases applying the public safety exception, the question about the gun in this case was not the first thing out of the officer's mouth, fast on the heels of apprehending the suspect. That delay, informed by the negative result of immediate searches of appellant's person and (at least three) of the alley, eroded whatever reasonable belief the officer might have had based on what he thought he saw during the chase. Further, the police's prompt action in cordoning off the alley where the officer thought the gun might be and the absence of people in that area during the wee hours of the morning, diminished the urgency of any objectively reasonable risk to public safety—no matter how genuine the officer's subjective concern. Finally, unlike in *Quarles* where the Court relied on the officer's prompt advisal of *Miranda* rights upon satisfying the public safety concern, the evidence in this case is that appellant was not advised at the scene, by any officer, of his *Miranda* rights.

The public safety exception is a narrow one and requires more than was present in this case to warrant a departure from *Miranda*'s constitutional mandate. I disagree with the majority's unnecessary conclusion to the contrary.