

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   20-10112 |
| Plaintiff-Appellee, | D.C. Nos. |
| v. | 1:18-cr-00147-DAD-SKO-1 |
| | 1:18-cr-00147-DAD-SKO |
| RAUL ADRIAN TORRES, | |
| Defendant-Appellant. | MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Argued and Submitted March 9, 2021
San Francisco, California

Before:  McKEOWN, IKUTA, and BRESS, Circuit Judges.
Dissent by Judge McKEOWN

Raul Adrian Torres appeals the district court's denial of his motions to

suppress and to dismiss.  We have jurisdiction under 28 U.S.C. § 1291, and we

affirm.

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

A detective with the Fresno Police Department was browsing social media when he observed a recently uploaded video of Torres posing with a gun at the house of a local gang member. The detective quickly linked the video to another social media profile that used the name Adrian Torres. After further investigation, the detective concluded (mistakenly, as it would turn out) that Torres had an outstanding warrant for being a felon in possession of ammunition. Officers on surveillance observed Torres leaving the house with a backpack. Officers exited the car, identified themselves, and ordered Torres to stop, but he took off running.

Officers gave chase and eventually caught up to Torres, who resisted arrest. Torres yelled profanities at officers while continuing to resist and fight. Eventually, officers were able to get Torres under control, handcuffed, and shackled. One officer asked Torres why he ran. He responded, "[c]ause I have a gun." Officers then searched Torres's backpack and found a firearm with its serial number scratched off, along with a loaded magazine and additional ammunition. Torres then stated to officers, "I'm gonna smoke you."

Officers asked Torres several routine booking questions, during which time Torres made multiple unsolicited statements about how he wished he would have used the gun to "shoot it out" with police. Eventually, officers discovered that Torres was not Adrian Torres, but Raul Adrian Torres, and that he had two

previous felony convictions for domestic violence, was on felony probation, and was wanted for another recent domestic violence offense. Officers advised Torres of his *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436 (1966), and he agreed to speak with them. He admitted that the gun was his, that he knew the serial numbers were scratched off, and that he was on the run "because he didn't check into his probation."

1. Torres argues that the police lacked sufficient cause to arrest him and that the district court erred by misapplying Section 148 of the California Penal Code and by declining to hold an evidentiary hearing. But the record establishes that the police had sufficient cause for the stop and the arrest. Given the information they were provided, the officers had "a good faith, reasonable belief that the arrestee was the subject of the warrant." *Rivera v. Cnty. of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014). Alternatively, police had reasonable suspicion to stop Torres based on the social media post and their belief that he was the subject of an outstanding warrant, *see Terry v. Ohio*, 392 U.S. 1, 30 (1968); *United States v. Garcia-Acuna*, 175 F.3d 1143, 1147 (9th Cir. 1999). Once Torres fled the attempted *Terry* stop and then assumed a fighting stance to resist the *Terry* stop, Detective Wilkin and Agent Carlos had probable cause to arrest Torres under Section 148(a)(1) of the California Penal Code. *See Velazquez v. City of Long*

3

*Beach*, 793 F.3d 1010, 1018–19 (9th Cir. 2015).  No evidentiary hearing was required because, although Torres argues about the legal significance of uncontested facts, he fails to identify any disputed, material issues of historical fact.  *See United States v. DiCesare*, 765 F.2d 890, 895 (9th Cir. 1985).

2.        Torres next claims that the search of his backpack violated the Fourth Amendment, and that therefore the district court erred in declining to suppress the gun found within it.  The search did not violate the Fourth Amendment, however, because it falls within the search incident to a lawful arrest exception.  *See Arizona v. Gant*, 556 U.S. 332, 351 (2009).  This case is controlled by *United States v. Cook*, 808 F.3d 1195 (9th Cir. 2015), which held that the search incident to a lawful arrest exception applied even though the individual searched was on the ground in handcuffs when his backpack was searched nearby.  *See id.* at 1199-1200.

3.        Torres also argues that the district court erred in declining to suppress his statement "[c]ause I have a gun" in response to the officer's question regarding "why he ran."  But assuming without deciding that this question is not covered by the public safety exception to *Miranda*, *see, e.g.*, *Allen v. Roe*, 305 F.3d 1046, 1050 (9th Cir. 2002), any error in admitting this statement is harmless, because there is no reasonable possibility that the erroneously admitted statement contributed to

4

Torres's decision to plead guilty to a violation of 18 U.S.C. § 922(g)(1). *United States v. Lustig*, 830 F.3d 1075, 1088–89 & n.14 (9th Cir. 2016).

To convict Torres under 18 U.S.C. § 922(g)(1), the government had to prove that Torres (1) knew that he possessed a firearm and (2) knew he was a person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1); *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019). In his reply brief, Torres argues for the first time that his "[c]ause I have a gun" response is prejudicial because it is evidence of the second element.[1] But even if we accept Torres's characterization of his own ambiguous statement, Torres's response does not tend to prove that Torres knew he was a person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). At most, Torres's response could be evidence that Torres knew that possession of the firearm was generally unlawful (because having the firearm motivated him to run from the police).[2] The dissent argues that because Torres's statement raises the

---

[1]As to the first element, that the defendant knew that he possessed a firearm, Torres's statement is duplicative of other evidence in the record. For instance, in his interview with Detective Martinez after receiving *Miranda* warnings, Torres admitted to knowing he was in possession of the firearm.

[2] Of course, a defendant's knowledge that possession of a firearm is unlawful is not itself an element of a § 922(g)(1) offense.

5

inference that Torres "knew it was wrong to have a gun," this inference then supports the further inference that the statement "suggests Torres knew" he was a person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" under 18 U.S.C. § 922(g)(1). We disagree. The dissent's labored and tangled disquisition, relies on a chain of inferences too attenuated and speculative to raise a "reasonable possibility" that Torres's statement contributed to Torres's plea decision. *Lustig*, 830 F.3d at 1088 & n.14. To hold otherwise would effectively create the automatic reversal rule rejected by *Lustig* and *Neder v. United States*, 527 U.S. 1, 7 (1999). *See Lustig*, 830 F.3d at 1089–90.

Torres's statement also adds little, if anything, to the already substantial circumstantial evidence that Torres knew his possession of a gun was illegal.[3] "[K]nowledge can be inferred from circumstantial evidence." *Rehaif*, 139 S. Ct. at 2198 (quoting *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)). Torres took off running when police attempted to stop him, and he admitted in multiple

---

[3]Because Torres's knowledge that it was illegal for him to possess a gun is not an element of a § 922(g)(1) charge, our observation that Torres's "[c]ause I have a gun" statement adds "little, if anything," to the evidence regarding this knowledge does not support the dissent's argument that Torres would have thought the admission of this statement would hurt him at trial by showing that he knew he was a person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year," 18 U.S.C. § 922(g)(1).

6

post-*Miranda* police interviews that he knew he had a gun, the gun was his, and he knew he had failed to comply with the terms of his probation and was wanted or had a warrant out for his arrest. Torres also later admitted that he knew the gun he had was illegal because its serial numbers were obliterated, and he also said he knew he was "going to get charged with it." He has also been convicted of two prior felonies and has never claimed he was unaware of his felon status. Given all this evidence, any improper admission of the "[c]ause I have a gun" statement was harmless.

4.     Torres argues that his statements to Detectives Flowers and Martinez should have been suppressed or, in the alternative, that an evidentiary hearing was needed. The statements made to Detective Flowers were admissible under the routine booking questions exception because Detective Flowers only asked Torres questions needed to run his information in the police booking system, and these questions were not reasonably likely to elicit incriminating responses. *See United States v. Williams*, 842 F.3d 1143, 1147 (9th Cir. 2016). Any spontaneous statements made by Torres during these booking questions need not be suppressed. *See Cox v. Del Papa*, 542 F.3d 669, 675–76 & n.10 (9th Cir. 2008).

There is also no issue with the post-arrest statements made to Detective Martinez. Although Torres attempts to analogize this case to *Missouri v. Seibert*,

542 U.S. 600 (2004), there is no evidence that a deliberate two-step interrogation occurred here. Nothing regarding any of the statements made by Torres in this case mandates an evidentiary hearing. *See DiCesare*, 765 F.2d at 895.

5. Finally, Torres claims that in denying his motion to dismiss, the district court failed to consider a fundamental fairness exception, which provides that charges may be dismissed if a "breach of [an] agreement rendered a prosecution fundamentally unfair." *See United States v. Williams*, 780 F.2d 802, 803–04 (9th Cir. 1986) (per curiam). Nothing in the record supports the existence of any agreement made by state prosecutors or the state court, and the state-court transcript clearly informed Torres that the state firearm case was going to be dismissed "in light of a federal prosecution." Because there was no breach of any agreement, that exception does not apply.

**AFFIRMED.**

*United States v. Raul Torres*, No. 20-10112

McKEOWN, Circuit Judge, dissenting:

When Agent Carlos kneed, punched, restrained, and handcuffed Torres, there was no doubt he was in custody. To its credit, the government doesn't disagree. But instead of giving Torres his *Miranda* warnings, Agent Carlos launched into questioning. Torres responded with an inculpatory statement that was instrumental in establishing an element of the charged crime. I respectfully dissent because Torres was subjected to custodial interrogation without the required *Miranda* advisements. The district court erred in failing to suppress the statement, and this error was not harmless.

The officer's question—why did you run?—easily falls into the category of "express questioning" or, at the very least, amounted to "words . . . that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). This was a pointed question aimed at eliciting an inculpatory response, not a friendly inquiry to see how Torres was doing nor a casual query about where he was going.

The only issue, then, is whether the public safety exception applies. It does not. The exception excuses the need for *Miranda* warnings when "police officers ask questions reasonably prompted by a concern for the public safety." *Allen v. Roe*, 305 F.3d 1046, 1050 (9th Cir. 2002) (quoting *New York v. Quarles*, 467 U.S.

649, 656 (1984)). The standard is high: "the police must reasonably believe that there is a serious likelihood of harm to the public or fellow officers." *Id.* In applying this exception, we have often emphasized the non-investigatory nature of the questioning. *See, e.g.*, *United States v. Carrillo*, 16 F.3d 1046, 1049–50 (9th Cir. 1994), *as amended* (May 17, 1994) ("Our conclusion is buttressed by the non-investigatory nature of the officer's question. The question called for a 'yes' or 'no,' not a testimonial response."); *United States v. Brady*, 819 F.2d 884, 888 (9th Cir. 1987) (applying the exception because, among other reasons, the question was "not investigatory").

Though the majority does not reach this issue, I would conclude, without doubt, that the exception does not apply here both because there was no danger to the public or to the police that necessitated the question and because the question was investigatory. Torres was arrested in an alleyway, and there is no evidence that there were other people in the alleyway at the time of the arrest. The most telling fact is that the officers do not even assert a subjective perception of immediate danger when Torres was shackled and handcuffed. Because the standard requires that the officers "reasonably believe" there is a danger, the public safety exception simply cannot apply where the officers do not even believe there was a danger when the question was asked. *Allen*, 305 F.3d at 1050.

The absence of any perception of danger is underscored by the nature of the

question asked, which did not seek information to address a public safety threat, but rather was aimed at eliciting testimonial, inculpatory information. If the officers were concerned about the gun, they could have asked, "are you armed?"; "is there a gun?"; "where is the gun?"; or another similar question. But instead they asked only why Torres ran. That question is framed to elicit an incriminating response rather than information "necessary to secure [the officers'] own safety or the safety of the public" especially when, as here, no threat has even been identified. *Quarles*, 467 U.S. at 659.

With no public safety justification to fall back on, the custodial interrogation without *Miranda* warnings was a violation of Torres' Fifth Amendment right. Contrary to the majority's conclusion, the error in denying the motion to suppress was not harmless. Our precedent sets a high bar for the government to establish harmlessness where, as here, the defendant took a conditional guilty plea. The government must show that there is no "reasonable possibility" that the erroneously admitted evidence "contributed to [the] decision to plead guilty." *United States v. Lustig*, 830 F.3d 1075, 1088 (9th Cir. 2016) (citation omitted). This standard is "necessarily hard for the government to meet"—so much so that "an appellate court will *rarely*, *if ever*, be able to determine whether an erroneous denial of a motion to suppress contributed to the defendant's decision [to plead guilty]." *Id*. (emphasis added) (citation omitted).

3

The government does not clear this high bar. Because the statement went directly to an element of the charged crime, there is more than a "reasonable possibility" that its erroneous admission contributed to the decision to plead guilty. *Id.* The statement that Torres ran because he had a gun establishes that he knew he was not allowed to have a gun. That is critical evidence because the charged crime—Felon in Possession of a Firearm, 18 U.S.C. § 922(g)(1)—requires proof that the defendant "knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019). By establishing that he knew it was wrong to have a gun, the statement in turn suggests that Torres knew he belonged to the category of persons barred from possessing a gun—in this case people with felony convictions. That the statement is legally damaging and would have been harmful to Torres at trial is more than enough to show that it "could have affected [Torres'] decision to plead guilty." *Lustig*, 830 F.3d at 1086.

The majority argues that Torres' statement does not tend to prove knowledge of felon status *at all*. That is a dramatic position to take, especially given the other evidence that the majority credits as tending to prove knowledge and the long-standing principle that knowledge "can be inferred from circumstantial evidence." *Rehaif*, 139 S. Ct. at 2198 (quoting *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)). Admittedly, different inferences might be drawn from the statement,

4

but the inference that Torres knew it was illegal for *him* to carry the gun because he has a felony conviction is a fair one, and indeed would be enough for a jury to convict. The evidence easily falls into the category of evidence the prosecutor could use to establish knowledge. And that's enough under *Lustig*, because if the prosecutor could leverage the evidence against Torres at trial, Torres could reasonably take a plea in fear of it.

The majority tries to sidestep the import of the statement by arguing that any value in the statement is merely duplicative of other evidence. But what other evidence? The only evidence that the majority cites as tending to prove *knowledge of felon status* is that Torres knew he was on probation and that he was convicted of a crime punishable by more than a year of prison.[1] Probation does not establish knowledge of felon status because it is used in California for both felonies and misdemeanors. *See* Cal. Penal Code § 1203. And the fact of a conviction *punishable* by over a year does not establish knowledge of that type of conviction because here, Torres was never actually punished by over a year of prison. More importantly, the Supreme Court has already told us that probation and the fact of a felony conviction are not enough to establish knowledge. *Rehaif* explicitly noted that the crime of Felon in Possession of a Weapon would not apply to "a person

---

[1] The majority also cites to evidence that clearly establishes that Torres possessed the gun, but that evidence goes to the first element—possession—not to the second element of knowledge of felon status.

5

who was convicted of a prior crime but sentenced only to probation, who does not know that the crime is *punishable* by imprisonment for a term exceeding one year." *Rehaif*, 139 S. Ct. at 2198 (internal quotation marks omitted). Because the two pieces of evidence relied on by the majority do not establish the necessary knowledge element, they do not render Torres' statement duplicative.[2]

Even if the statement were duplicative, the *Lustig* standard would still be met. If there are multiple pieces of evidence probative of an element, it is the defendant's prerogative, not ours, to evaluate at what point the evidence becomes too strong to risk trial: "only the defendant is in a position to evaluate the impact of a particular erroneous refusal to suppress evidence." *Lustig*, 830 F.3d at 1088 (quoting *United States v. Benard*, 680 F.3d 1206, 1213 (10th Cir. 2012)) (internal quotation marks and citation omitted).

Because the statement contained evidence of guilt, the prospect of its admission "could have affected [Torres'] decision to plead guilty." *Id.* at 1086. The district court's error therefore was not harmless, and for that reason I respectfully dissent and would reverse.

---

[2] In passing, the majority also holds Torres' silence against him as evidence of knowledge, noting that Torres "has never claimed he was unaware of his felon status." But of course that reasoning misplaces the burden; Torres need not prove his innocence, and his silence on an issue should not be held out as evidence against him.

6